22 August 2000

No. 2--99--1018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Ogle County.

)

Plaintiff-Appellee, )

)

v. ) No. 99--CF--8

)

JOSEPH SPIEZER, ) Honorable 

) John B. Roe,

Contemnor-Appellant. ) Judge, Presiding.

JUSTICE GEIGER delivered the opinion of the court:

The contemnor, Joseph Spiezer, appeals from the September 8, 1999, order of the circuit court of Ogle County finding him in direct civil contempt and ordering him incarcerated until such time as he turned over to the State a copy of a certain report made by a handwriting expert.  Spiezer, an attorney, had been retained by Eva E. Castro to defend her against a charge of first-degree murder.  Spiezer had consulted with a handwriting expert, Anthony Iantosca, who subsequently made a report.  The trial court ordered Spiezer to turn over a copy of the report to the State, but he refused, resulting in the contempt finding and jail sentence.  Spiezer argues that the trial court's order should be reversed because the report is not discoverable, as disclosure would violate the following of Castro's constitutional rights: the sixth amendment right to effective assistance of counsel, the fifth amendment privilege against self-incrimination, and the right to equal protection of the laws.  In addition, Spiezer argues that an attorney should not be held in contempt for failing to turn over a document that the court has in its possession.

On May 6, 1999, the trial court entered an order granting Castro's motion appointing expert witnesses whose fees were to be paid by the State.  One such expert was Anthony Iantosca, who was to perform a handwriting analysis on an item that was to be used by the State as evidence at trial.  On or about May 20, 1999, Iantosca provided his report to Spiezer.  On July 13, 1999, the State filed its motion to produce, pursuant to Supreme Court Rule 413(c) (134 Ill. 2d R. 413(c)), requesting production of the Iantosca report.

On July 28, 1999, the  trial court granted the State's motion.  In its ruling, the trial court acknowledged that Spiezer had indicated that he did not intend to call Iantosca at trial.  The trial court found that Iantosca's report "is purely scientific in nature and doesn't include any statements made by [Castro]."   The trial court ordered Spiezer to provide the State with a copy of the report by August 9, 1999.  At that time, Spiezer requested a "final and appealable order," stating, "I don't intend to comply with that, and with all due respect, I don't think I can *** in fairness to my client."

At the hearing on August 9, 1999, the parties appeared before the trial court, and Spiezer again advised of his refusal to turn over the report.  The trial court indicated that its order would not be final and appealable and that the court was unaware of a procedure permitting it to certify the question to the appellate court.  The trial court then indicated that it would modify its prior order regarding the turnover of the report by appointing another judge, Judge Pemberton, to review the report 
in camera
 to determine if it contained anything prejudicial.  Spiezer then agreed to provide a copy of the report for Judge Pemberton's review.

On September 2, 1999, the parties appeared before the trial court and advised that Judge Pemberton had indicated to Spiezer that the report was not privileged and that he was to turn over the report to the State.  Spiezer again stated that he would not turn over the report.

At a pretrial hearing on September 8, 1999, the trial court made a finding that Spiezer's refusal to turn over the report was a willful violation of the court's orders and further found Spiezer in direct civil contempt of court.  The trial court ordered that Spiezer be incarcerated in the Ogle County jail until he complied with the court order.  The court noted that it had "other alternatives, obviously, rather than incarcerating [him], but none of them produce the report."  The court stated that imposing a fine upon Spiezer would not produce the report and that barring Spiezer from calling Iantosca at trial would be of no effect since Spiezer did not intend to call him.  The trial court then ordered a court officer to escort Spiezer to jail.

On September 10, 1999, Spiezer filed a motion to stay enforcement of the judgment of contempt, arguing that he had acted in good faith to challenge the order and that his incarceration approximately two weeks prior to jury trial would deprive Castro of her right to the effective assistance of counsel.  Spiezer argued that he intended to appeal the contempt order and requested that he be released from jail pending the appeal.  The trial court denied the motion.  On that same day, Spiezer filed a notice of appeal.

Later that day, this court entered an order staying the judgment of civil contempt until September 14, 1999, for consideration on an emergency basis
 by a three-judge panel of the appellate court.  This court further ordered that Spiezer be released.  On September 15, 1999, this court allowed Spiezer's motion to stay upon plenary consideration.  This court further ordered that Spiezer remain released from custody until further order of this court.  Thereafter, the trial court continued the Castro jury trial.

We have taken with the case
 the State's motion to strike certain portions of Spiezer's appellate brief.  The State alleges that Spiezer attached to his brief copies of certain reports of proceedings
, rather than filing a motion to supplement the record, in violation of Supreme Court Rule 323 (166 Ill. 2d R. 323).  The State moves to strike the transcripts and all references to them.  We deny the State's motion, as we believe that Spiezer has provided in the supplemental report of proceedings sufficient portions of the trial court record for this court to render our decision and that any materials attached to his brief do not shed any light on the legal issues presented by this case.

Turning now to the merits of the contempt proceeding, Spiezer sets forth various constitutional arguments with regard to the validity of the discovery order.  The first is that compelling a criminal defendant to produce the reports of nontestifying, consulting experts violates the defendant's right to effective assistance of counsel under the sixth amendment.  The State responds that a report of a handwriting analysis would not reveal privileged communications and that a handwriting consulting expert is not indispensable to Spiezer's preparation.

Discovery in criminal proceedings is governed, in part, by Supreme Court Rule 413.  See 134 Ill. 2d R. 413.  Rule 413(c), pertaining to medical and scientific reports, provides as follows:

"Subject to constitutional limitations, the trial court shall *** require that the State be informed of *** any reports or results, or testimony relative thereto, *** of scientific tests *** or any other reports or statements of experts which defense counsel has in his possession or control ***." 134 Ill. 2d R. 413(c).

In addition, Rule 413 is subject to the work product exception set forth in Rule 412(j):

"Disclosure under this rule and Rule 413 shall not be required of legal research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions *** of defense counsel or his staff."  134 Ill. 2d R. 412(j).

Neither Rule 413(c) nor the case law surrounding it, unlike Rule 213(g), which is its counterpart in the civil arena, expressly provides whether Rule 413(c) applies to nontestifying as well as testifying experts.  As such, it is necessary for us to determine whether a constitutional right or some other privilege protects reports of nontestifying, consulting experts from disclosure in criminal cases.

The use of expert witnesses in specialized fields is clearly crucial to a criminal defense attorney's ability to prepare for trial.  In 
People v. Lawson
, 163 Ill. 2d 187, 219 (1994), our supreme court considered whether the trial court had erred in denying the defendant's motion for funds to hire a fingerprint and shoe print expert for preparation in the defendant's murder trial.  The State admitted that the constitution may require that the State afford a criminal defendant funds to hire experts, but it argued that the indigent defendant must first name the expert he seeks to hire, as well as the expert's fee, before the motion may be granted.  The court disagreed, holding that the constitutional protections could not be limited by the mere failure to name the price and identity of the expert hired.  The court was particularly moved by the results of defense counsel's ineffective cross-examination of the State's expert, which resulted from counsel's inability to prepare without expert assistance.  The court also noted that a defense expert could offer opinions different from those held by the State and that the State possessed an unfair advantage when it could present expert testimony while, at the same time, the defendant could not.  
Lawson
, 163 Ill. 2d at 230.

Once the expert has performed the necessary work for the defense but then rendered an opinion or conclusion that is unfavorable to the defendant, sharp disputes have arisen concerning whether defense counsel must disclose that information.  As discussed below, many jurisdictions have held that the reports prepared by nontestifying, consulting experts are protected from disclosure.  What is unclear, however, is the proper framework for the analysis.  Four distinct bases for such protection have emerged in the case law discussed below: the fifth amendment privilege against self-incrimination, the sixth amendment right to effective assistance of counsel, the attorney-client privilege, and the work product doctrine.

For the reasons that follow, we are most persuaded that the work product doctrine protects from disclosure reports and other materials prepared by nontestifying, consulting experts and also prevents the State from introducing such evidence at trial.  As a matter of first impression in Illinois, we delve into a general discussion of the relevant case law to understand the evolution of the protection afforded to materials prepared by nontestifying, consulting experts, as well as their potential testimony, and to explore why protection of same is so critical in the criminal arena.

In 
United States v. Nobles
, 422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975), the Supreme Court considered whether the production of a certain report prepared by a defense investigator, who was to testify for the defense at trial to impeach the identification testimony of the State's witnesses, could be compelled.  The Court rejected the argument that production would violate the fifth amendment, as the privilege against self-incrimination does not extend to the testimony or statements of third parties called as witnesses at trial.  
Nobles
, 422 U.S. at 233, 45 L. Ed. 2d at 151, 95 S. Ct. at 2168; see also 
People v. Boclair
, 129 Ill. 2d 458, 482 (1989) (
Boclair II
) (the fifth amendment was not violated when, after excising privileged material 
in camera
, the trial court ordered the defense to produce the notes taken by its investigator concerning witness statements).

The 
Nobles
 Court next considered whether the work product doctrine would exempt the report from disclosure.  Noting the history surrounding the creation of the work product doctrine, the Court relied upon the basic premise, originally articulated in 
Hickman v. Taylor
, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947), that:

" '[i]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy ***.  That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. ***'

The Court therefore recognized a qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.' "  
Nobles
, 422 U.S. at 237-38
, 45 L. Ed. 2d at 153, 95 S. Ct. at 2169-70, quoting 
Hickman
, 329 U.S. at 510-11, 508, 91 L. Ed. at 462, 461, 67 S. Ct. at 393, 392.

The Court noted that the work product doctrine is most frequently asserted in civil litigation, but its role in the criminal context is more vital.  
Nobles
, 422 U.S. at 238, 45 L. Ed. 2d at 153, 95 S. Ct. at 2170.  The Court characterized the work product doctrine as "intensely practical" and noted that attorneys must often rely on the assistance of investigators and other agents in preparing for trial.  
Nobles
, 422 U.S. at 238, 45 L. Ed. 2d at 154, 95 S. Ct. at 2170.  The Court concluded that the work product doctrine protected material prepared by agents for the attorney.
 
Nobles
, 422 U.S. at 238-39, 45 L. Ed. 2d at 154, 95 S. Ct. at 2170.
  The Court declined, however, to delineate the scope of the doctrine, holding that the defendant had waived the right to invoke its protections because the defendant had elected to present the investigator as a witness at trial.  
Nobles
, 422 U.S. at 239, 45 L. Ed. 2d at 154, 95 S. Ct. at  2170-71.

Although no cases in Illinois have mirrored the precise factual and legal issues presented in 
Nobles
, our supreme court in 
People ex rel. Bowman v. Woodward
, 63 Ill. 2d 382 (1976), considered whether the defendant could invoke the fifth amendment privilege against self-incrimination in refusing to comply with the State's request for any scientific reports pertaining to the case.  In 
Woodward
, the State had filed a motion for discovery under Supreme Court Rule 413(c), asking the defendant to inform the State whether any scientific tests had been conducted and to provide the State with copies of any test reports.  The trial court entered an order compelling the defendant to provide copies of test reports relative only to experts whom the defendant intended to call to testify at trial.  The State appealed, requesting disclosure of the names of all parties who had conducted testing along with all test reports, regardless of whether the parties performing the tests would testify.  The defendant argued that to compel the disclosure of reports and statements of experts whom he had consulted, but did not intend to call at trial,  violated his fifth amendment privilege against self-incrimination.

The reviewing court first noted that the State was conducting an impermissible fishing expedition in that the State did not know of the existence of specific material but, rather, sought to force the defendant to reveal his knowledge of whether tests had been conducted.  
Woodward
, 63 Ill. 2d at 387.  The court then held that if the defendant were compelled to provide statements of consulting experts, or reports prepared by them, there would be a violation of the constitutional privilege against self-incrimination.  
Woodward
, 63 Ill. 2d at 387.  The court expressed approval of the holding in 
Jones v. Superior Court
, 58 Cal. 2d 56, 372 P.2d 919, 22 Cal. Rptr. 879 (1962).  In 
Jones
, the court held that to compel the defendant to produce information that he did not intend to introduce at trial would violate his privilege against self-incrimination.  The 
Jones
 court noted that information pertaining to, or prepared by, witnesses whom the defendant intended to call at trial, on the other hand, was discoverable to allow the State to prepare for cross-examination of those witnesses.  See 
Woodward
, 63 Ill. 2d at 389.

The 
Woodward
 court considered the holding in 
Nobles
 that the fifth amendment privilege would not extend to statements made by third parties called to testify at trial.  
Woodward
, 63 Ill. 2d at 389.  The court distinguished 
Nobles
 on the facts in that the defendant in 
Nobles
 planned to call the investigator to testify at trial regarding statements that prosecution witnesses had made to the investigator.  
Woodward
, 63 Ill. 2d at 389.

If we were persuaded that the fifth amendment privilege against self-

incrimination were the appropriate basis for protection of materials from nontestifying, consulting experts, then our analysis would conclude with the holding from 
Woodward
.  We are not entirely persuaded, however, by 
Woodward
's distinction of the holding in 
Nobles
.  In 
People v. Lego
, 116 Ill. 2d 323, 338 (1987), our supreme court considered the application of 
Nobles
 and 
Woodward
 to the issue of whether the defense was required to turn over tape recordings made by defense investigators of interviews with State witnesses.  The court held that the fifth amendment privilege was personal to the defendant and did not extend to statements taken of witnesses.  The court also held that the work product doctrine, which protects the mental processes of an attorney, does not apply to "[t]he verbatim statements of witnesses."  
Lego
, 116 Ill. 2d at 339; see also 
People v. Boclair
, 119 Ill. 2d 368, 375 (1987) (
Boclair I
) (work product doctrine is not implicated when the trial court, after excising privileged material 
in camera
, ordered the defense to produce the notes taken by its investigator during interviews with witnesses that contained the witnesses' own words).  Neither 
Boclair I
 nor 
Lego
 addressed whether the work product doctrine may protect materials prepared by defense investigators and/or experts that do not involve verbatim statements of witnesses.   Therefore, we are compelled to examine additional case law for guidance as to the appropriate framework for our analysis.

There are no cases in Illinois applying 
Woodward
 to the situation at hand.  However, w
e have found cases from other jurisdictions that consider whether the reports and potential testimony of nontestifying, consulting experts are protected from disclosure to the State.  Yet, these cases are not necessarily consistent in the basis upon which they rely to accord such protection.

In holding that the State may not call a handwriting expert retained by the defendant to testify at trial, the New Jersey Supreme Court relied upon the sixth amendment right to the effective assistance of counsel.  See 
State v. Mingo
, 77 N.J. 576, 392 A.2d 590 (1978).  Prior to the expert's examination of the handwriting exemplars, defense counsel had agreed to provide a copy of the expert's report to the State.  The report turned out to be adverse to the defendant, and the expert was subpoenaed by the State to testify at trial.  Over the defendant's objections, the expert testified and the defendant was convicted.

The appellate court reversed, holding that the report and testimony of an expert retained by the defense who does not testify at trial are not available to the State.  
Mingo
, 77 N.J. at 586, 392 A.2d at 595.  The court explained that there were several bases for its holding, including the sixth amendment right to effective representation and the attorney-client privilege, which it believed were related.  See also 
Perez v. People
, 745 P.2d 650 (Colo. 1987)
.  The court further noted that these principles were closely related to the work product privilege,  although the State's use of an expert retained by the defense does not come within its scope.  The court held that the intent behind all three protections, the fifth and sixth amendments and the work product doctrine, would be subverted if the State were permitted to call consulting experts retained by the defense.  
Mingo
, 77 N.J. at 584-85, 392 A.2d at 594.

In so holding, the court was particularly persuaded by the need of defense counsel to have "full investigative latitude in developing a meritorious defense on his client's behalf."  
Mingo
, 77 N.J. at 582, 392 A.2d at 592.   In addition, the court believed that the State had no business calling the defendant's expert as its own witness, and that it was fully capable of retaining its own expert.  
Mingo
, 77 N.J. at 581, A.2d at 592.

The court in 
United States v. Alvarez
, 519 F.2d 1036 (3d Cir. 1975), analyzed the issue similarly.  In 
Alvarez
, after a hearing in which the trial court found the defendant competent to stand trial, the defendant requested the authority to retain an additional psychiatrist in connection with defense preparation.  The court granted the motion and ordered that the defendant provide reports of the psychiatrist to the government pursuant to Federal Rule of Criminal Procedure 16.  Rule 16(b)(1)(B), regarding the defendant's disclosure of reports,  provides as follows:

"[T]he defendant, on request of the government, shall permit the government to inspect and copy *** any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case *** 
which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial
 when the results or reports relate to that witness' testimony." (Emphasis added.)  Fed. R. Crim. P. 16(b)(1) (B).

The defendant later moved to quash the government's subpoena to the psychiatrist compelling him to testify at trial.  The trial court denied the defendant's motion, and the psychiatrist testified at trial.

On appeal, the defendant argued that the disclosures to the government violated the fifth amendment privilege against self-incrimination, the sixth amendment right to the effective assistance of counsel, and the attorney-client privilege.  The reviewing court dispensed with the fifth amendment argument, noting that the defendant's statements to the psychiatrist were voluntary.  
Alvarez
, 519 F.2d at 1045.  With regard to the sixth amendment and attorney-

client privilege arguments, the court noted that, in 
United States v.  Kovel
, 296 F.2d 918 (2d Cir. 1961), the court held that communications to an accountant in anticipation of litigation are protected by the attorney-client privilege.  See 
Alvarez
, 519 F.2d at 1045.  The court further noted that there was no difference between a defense counsel's need for expert assistance in accounting and in psychiatry.  "The effective assistance of counsel *** demands recognition that a defendant be as free to communicate with a psychiatric expert as with the attorney."  
Alvarez
, 519 F.2d at 1046.  The court held that what it characterized as the "sixth amendment attorney-client privilege" would apply to protect the reports and potential testimony of nontestifying, consulting experts retained by the defense.

The court further noted that Federal Rule of Criminal Procedure 16 was limited to the production of medical reports that the defendant intends to use at trial and that the trial court's order regarding discovery went beyond the rule in requiring reports of all experts regardless of whether they would testify at trial.  In discussing the application of the sixth amendment right to the  effective assistance of counsel, the court was troubled by the notion that, under the government's argument, defense counsel would run the risk that an expert he retained for advice and assistance might be forced to serve involuntarily as a government witness.  
Alvarez
, 519 F.2d at 1046.  The court held that such a rule would have the inevitable effect of depriving defendants of the effective assistance of counsel.   
Cf
.  
United States ex rel. Edney v. Smith
, 425 F. Supp. 1038, 1049 (E.D.N.Y. 1976), 
aff'd
, 556 F.2d 556 (2d Cir. 1977) (noting that the sixth amendment claim is predicated upon the assumption that the disclosure would compromise defense counsel's ability to investigate and prepare the defense case); see also 
Noggle v. Marshall
, 706 F.2d 1408, 1414 (6th Cir. 1983) (rejecting the conclusion in 
Alvarez
 that the guarantee of effective counsel does not insulate from disclosure the opinion of an expert retained by the defense as a potential witness).  The 
Alvarez
 court did not reach the issue of whether reports and potential testimony of nontestifying, consulting experts were protected by the work product doctrine.

Our research discloses only one case, 
United States v. Walker
, 910 F. Supp. 861 (N.D.N.Y. 1995), that compares the work product doctrine and the sixth amendment right to effective assistance of counsel as the proper basis to protect the reports and potential testimony of nontestifying, consulting experts retained by the defense.  In 
Walker
, the court considered whether the government would be permitted to call two ballistics experts retained by the defense whom the defense did not intend to call at trial.  The court held that the government would not be permitted to present testimony from the experts regarding the efforts they undertook at the request of defense counsel unless the government first made a showing of need of that testimony and an inability to obtain the substantial equivalent of that testimony without undue hardship.  
Walker
, 910 F. Supp. at 864.  
 The court's holding parallels the requirements of Federal Rule of Criminal Procedure 16(b)(1)(B), as noted above, although the rule was not specifically relied upon by the court.

The court noted that, while the analysis by the 
Mingo
 court under the sixth amendment "applies with equal force here," its own conclusion was "grounded in a practical application of the work product doctrine."  
Walker
, 910 F. Supp. at 864.  Recognizing that the issue of protecting expert work product delves into "unchartered waters," the court was persuaded by the comments in 
Nobles
 that attorneys often must rely upon the assistance of investigators and other agents in preparation for trial, which justifies the protection under the work product doctrine.  See 
Walker
, 910 F. Supp. at 865-66.  The court concluded that, absent the application of the work product doctrine to consulting experts, a defendant's preparation for trial "can only be crippled by the prospect of creating an unfavorable witness every time he attempts to obtain an unbiased assessment of the government's evidence by consulting an expert."  
Walker
, 910 F. Supp. at 865.  The court cautioned that the work product privilege is waived if the defense calls its consultative expert to testify.  
Walker
, 910 F. Supp. at 865.

As we stated earlier, we are persuaded by the holdings from all of the foregoing case law that the State is prohibited from discovering the identity and reports of nontestifying experts retained by the defense and is similarly prohibited from calling such experts to testify at trial.  We are persuaded by the logic in these cases that to hold otherwise would constitute a violation of the work product doctrine.  See 
Walker
, 910 F. Supp. at 864; 
Nobles
, 422 U.S. at 238, 45 L. Ed. 2d at 154, 95 S. Ct. at 2170-71. 

In holding that the work product doctrine is the proper basis of such protection, we must address why the other asserted bases are not.  We believe that the attorney-client privilege and the  privilege against self-incrimination arguments are easily dispensed with. As noted above, the fifth amendment self-

incrimination argument has been rejected by several courts.  See 
Alvarez
, 519 F. 2d at 1045; 
Boclair II
, 129 Ill. 2d at 482; 
Lego
,
 116 Ill. 2d at 338.

Similarly, the attorney-client privilege argument has been rejected when made in the context of disclosure of opinions or materials that do not concern specific communications made by the defense to its retained expert.  See 
Boclair II
, 129 Ill. 2d at 482; 
People v. Speck
, 41 Ill. 2d 177 (1968) (the attorney-

client privilege was not implicated when the State called a fingerprint expert, who had been consulted by the defense, to testify because the testimony did not concern any communications between the defense and the expert); 
cf.
 
People v. Knuckles
, 165 Ill. 2d 125, 135 (1995) (held, as a matter of first impression, that the attorney-client privilege applied to protect the substance of communications between the defense and its retained psychiatric expert).

We also note that the committee comments to Supreme Court Rule 413 express the view that the production of medical and scientific evidence does not violate either the attorney-client privilege or the privilege against self-incrimination unless it is based upon statements made by the defendant.
 See 134 Ill. 2d R. 413. What is necessarily more difficult, for our purposes, than the self-incrimination and attorney-client privilege arguments, in light of 
Alvarez
 and 
Mingo
, is the distinction between the work product doctrine and the sixth amendment right to the effective assistance of counsel.

The essence of the sixth amendment right is privacy of communication with counsel.  
United States v. Rosner
, 485 F.2d 1213, 1224 (2d Cir. 1973).  In 
Strickland v. Washington
, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063-64  (1984), the Supreme Court explained that two separate and distinct lines of case law have emerged from the interpretation of the sixth amendment right to the effective assistance of counsel.  The first is that the government violates the right when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense.  The second line of case law concerns the failure of counsel to render adequate legal assistance.  
Strickland
, 466 U.S. at 686, 80 L. Ed. 2d at 692, 104 S. Ct. at 2061-62.

In analyzing whether the sixth amendment right to effective assistance bars disclosure of the Iantosca report, we are not dealing with the latter classification of case law as explained in 
Strickland
.  That is to say, the quality of Spiezer's legal representation is not at issue.  What we are concerned with, however, is whether the disclosure of the report would constitute interference in Spiezer's ability to make certain decisions about defense strategy that rises to the level of a constitutional violation.  There is no bright line rule that would tell us whether a certain type of governmental  interference necessarily translates into a sixth amendment violation.  However, we can be guided by some examples of that type of governmental intrusion.

Not all governmental action that arguably could be called an interference with the attorney-client relationship necessarily violates sixth amendment rights.  
United States v. Irwin
, 612 F.2d 1182, 1185 (9th Cir. 1980).  In 
United States v. Marshank
, 777 F. Supp. 1507, 1525 (N.D. Cal. 1991), defense counsel had collaborated with the government in the investigation and prosecution of the defendant.  The court held that this type of intrusion into the attorney-client relationship violated the sixth amendment right to effective assistance.  
Marshank
, 777 F. Supp. at 1525.  Governmental monitoring of communications between an attorney and client is also an egregious violation of sixth amendment rights.  See generally 
People v. Knippenberg
, 66 Ill. 2d 276, 285 (1977); see also 
Geders v. United States
, 425 U.S. 80, 91, 47 L. Ed. 2d 592, 601, 96 S. Ct. 1330, 1336-37 
 (1976)  (bar on attorney-client consultation during overnight court recess violates sixth amendment right).

As noted above, the sixth amendment analysis in 
Alvarez
 has been rejected. See 
Edney
, 425 F. Supp. at 1049; see also 
Noggle
, 706 F.2d at 1413-14.  The 
Noggle
 court doubted that the definition of the scope of constitutional guarantees was properly before the court in 
Alvarez
.  
Noggle
, 706 F.2d at 1413.  In 
Noggle
, the court held that, because the defendant had put his sanity at issue by calling psychiatrists to testify that he was insane, the defendant waived the limited privilege attaching to the testimony of a psychiatrist retained, but not called, by the defense.  
Noggle
, 706 F. 2d at 1415.  According to the court in 
Noggle
, the balance struck by the implementation of a rule allowing the government to call, in rebuttal, a psychiatrist retained by the defense did not have constitutional implications.  
Noggle
, 706 F.2d at 1415; see also 
Nobles
, 422 U.S. at 233, 45 L. Ed. 2d at 151, 95 S. Ct. at 2168.

Upon consideration of the holding in 
Noggle
, we are not persuaded that the sixth amendment guard against undue interference, as outlined in 
Gedders
, 
Marshank
, and 
Black
, necessarily applies to discovery issues regarding expert witnesses.  It would appear to us, for the reasons that follow, that the work product doctrine is the more appropriate basis to protect the Iantosca report from disclosure than is the sixth amendment right to the effective assistance of counsel.

The purpose behind the work product doctrine is to facilitate the flow of information leading to theories and strategies to be employed by the attorney at trial, thus allowing the attorney to prepare for litigation.  While the attorney-

client privilege may protect certain aspects of a nontestifying, consulting expert's report, as in 
Knuckles
, other aspects of the expert's report concern creative and/or intellectual work product that is derived from the expert's mental processes and then shared with the attorney to facilitate the attorney's preparation for trial. The work product doctrine is somewhat analogous to protections afforded to intellectual property, which operate to induce the efforts of the scientist or artist.  See  R. Allen 
et al.
, A
 Positive Theory of the Attorney-Client Privilege & the Work Product Doctrine
, 19 J. Legal Stud. 359, 385 (1990)
.  In the context of the application of the work product doctrine to protect the reports and potential testimony of nontestifying, consulting experts, it is not only the substance of the expert opinions that is protected but also  the fact of the attorney's consultation with the expert and the type of assistance that the attorney requested.

The application of the work product doctrine provides the attorney the necessary confidentiality to induce the attorney to undertake certain steps to investigate and develop his client's case.  See R. Allen 
et al.
,  
A Positive Theory of the Attorney-Client Privilege & the Work Product Doctrine
, 19 J. Legal Stud. 359, 362 (1990).  Accordingly, the work product doctrine operates to increase the information available to the trier of fact by encouraging the attorney to seek, on his own, information about the case that he could not obtain from his adversary through the discovery process.

We have demonstrated in our case discussion that the work product doctrine is never absolute.  A conditional work product privilege, one that permits the State to defeat the privilege by establishing a special need for the expert's information, recognizes the balance between the need to accord protection to work that is performed on the case at the behest of defense counsel and the need to ensure that the trier of fact will be exposed to the relevant facts of the case and necessary interpretations of the evidence. See generally E. Imwinkelried, 
The Applicability of the Attorney-Client Privilege to Non-Testifying Experts: Reestablishing the Boundaries between the Attorney-Client Privilege and the Work Product Protection
, 68 Wash. U. L.Q. 19, 38 (1990).

It is precisely this need to strike a balance between competing interests at trial that precludes protecting the reports and potential testimony of a nontestifying, consulting expert on sixth amendment grounds.  If the protection were embodied in constitutional form, it would not be amenable to change by rule, statute, or further case law development.  See 
Edney
, 425 F. Supp. at 1054.  Courts and legislatures should have reasonable freedom to develop new approaches to issues concerning discovery and testimonial privilege.  See 
Edney
, 425 F. Supp. at 1054.  We believe that such freedom would be unnecessarily impaired were our holding to turn on sixth amendment analysis.

Following 
Walker
, we hold that the reports and potential testimony of nontestifying, consulting experts are protected from disclosure to the State pursuant to the work product doctrine.  The work product doctrine is qualified. Its application is subject to a showing of necessity by the State, and, further, it does not apply to verbatim statements of witnesses, in accordance with 
Lego
.  Our decision today attempts to answer some of the questions regarding the scope of the work product doctrine that were left open in 
Nobles
, 
Lego
, and 
Boclair I
.

This brings us back to the question of how our holding comports with Supreme Court Rules 413(c) and 412(j). As noted above, Rule 413(c) does not expressly limit disclosures concerning experts to those experts testifying at trial.  See 134 Ill. 2d R. 413(c).  We further note that the committee comments are silent as to whether Rule 413(c) applies to nontestifying, consulting experts. This is in stark contrast to Federal Rule of Criminal Procedure 16(b)(B), which is limited to those items and/or witnesses that the defendant intends to present at trial.

More telling, however, is the tremendous disparity between Rule 413(c) and Rule 213(g), which governs disclosures concerning expert witnesses in civil cases.  Rule 213(g) defines an opinion witness as "a person who will offer any opinion testimony."  166 Ill. 2d R. 213(g).  In civil cases, parties are not entitled to discover the identities or opinions of nontestifying, consulting experts.  See 
Costa v. Dresser Industries, Inc,
, 268 Ill. App. 3d 1 (1994).  Indeed, the identity, opinions, and work product of a consultant are discoverable only upon a showing of "exceptional circumstances under which it is impracticable *** to obtain facts or opinions on the same subject matter by other means."  166 Ill. 2d R. 201(b)(3); see also 
Hickman
, 329 U.S. at 512, 91 L. Ed. at 463,  67 S. Ct. at 394 ("[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order").

We see no reason why the same would not be true for experts in criminal cases.  With the advent of DNA testing and new forensic testing procedures, a strong argument can be made that the need for expert consultation is more compelling in the criminal context than in the civil.  To that end, we do not believe that the drafters of Rule 413(c) specifically intended that the reports of nontestifying, consulting experts fall within its ambit.  Therefore, we believe that the work product doctrine set forth in Rule 412(j) includes materials pertaining to or prepared by nontestifying, consulting experts. 

Because we hold that the reports and materials prepared by a nontestifying, consulting expert are protected from disclosure to the State by the work product doctrine, we need not reach Spiezer's argument that disclosure violates Castro's right to equal protection.  Therefore, we turn to resolution of the contempt order.

As discussed above, the discovery order by the trial court was legally erroneous.  Thus, we must reverse the trial court's finding that Spiezer was in direct civil contempt of court for refusing to comply with the order.  See 
Mlynarski v. Rush-Presbyterian-St. Luke's Medical Center
, 213 Ill. App. 3d 427, 430 (1991).

For the foregoing reasons, the judgment of the circuit court of Ogle County is reversed. 

Reversed.

McLAREN and GALASSO, JJ., concur.