CASANUEVA, Judge.
Andrea Kidder petitions this court for a writ of certiorari seeking to quash a discovery order that required her to disclose the results of a blood alcohol test. Because she was required to disclose the results of this scientific test pursuant to Florida Rule of Criminal Procedure 3.220(d) (1) (B) (ii), the discovery order did not depart from the essential requirements of law and the petition is therefore denied.
I. FACTS AND PROCEDURAL HISTORY
In November 2009, Ms. Kidder was involved in an automobile accident which resulted in the death of Bree Kelly.[1] At the request of the Florida Highway Patrol, emergency medical service personnel ob *1169 tained two blood samples from Ms. Kidder. The Florida Department of Law Enforcement (FDLE) analyzed one sample and determined that the alcohol content was 0.196 percent.
Ms. Kidder was thereafter charged by information with DUI manslaughter and vehicular homicide, and she elected to participate in pretrial discovery pursuant to rule 3.220(a). Ms. Kidder filed a motion to require FDLE to send the second blood sample to Wuesthoff Toxicology Laboratory to have the sample analyzed to determine its alcohol content. The trial court granted this motion and the second blood sample was sent to Wuesthoff for testing.
Thereafter the State moved to compel Ms. Kidder to provide it with the results of Wuesthoffs blood alcohol analysis pursuant to the reciprocal discovery provisions of rule 3.220(d)(l)(B)(ii). It argued that the rule requires a defendant, who has elected to participate in discovery, to disclose the results of scientific tests. The State further argued that the results of the scientific test did not meet the definition of work product as defined by rule 3.220(g)(1).
In opposition, Ms. Kidder asserted that the results of Wuesthoffs testing were protected work product and that compelling disclosure of the report would contravene the Fifth and Sixth Amendments to the United States Constitution. Ms. Kidder asserted that she did not intend to use the report at trial.
The trial court entered its order compelling Ms. Kidder to provide the State with a copy of Wuesthoffs report. We note that the report at issue is not included in the appendix and the transcript of the motion hearing does not indicate that the trial court viewed the report in camera or otherwise. However, Ms. Kidder does not assert that Wuesthoffs report contains the opinions, theories, or conclusions of her attorney or members of the attorney’s legal staff.
II. ANALYSIS
A. Certiorari Review
“A petition for writ of certiorari is appropriate to review a discovery order when the order departs from the essential requirements of law, causing material injury throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal.” Nussbaumer v. State, 882 So.2d 1067, 1071 (Fla. 2d DCA 2004). The last two requirements of this test are jurisdictional. Barker v. Barker, 909 So.2d 333, 336 (Fla. 2d DCA 2005).
We agree that discovery of information that could be considered work product may cause such irreparable injury if disclosed. Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995). However, as discussed below, the Wuesthoff report does not contain work product.
B. Florida Rule of Criminal Procedure 3.220
Participation in the discovery process is not mandatory for a criminal defendant: “a defendant may elect to participate in the discovery process provided by these rules.... ” Fla. R. Crim. P. 3.220(a). Once this election occurs, it “triggers a reciprocal discovery obligation for the defendant” and both the prosecution and defendant are then bound “to all discovery procedures contained in these rules.” Id.
The defendant’s reciprocal discovery obligation pertinent to the case at bar is set forth in rule 3.220(d)(l)(B)(ii) and requires a defendant to disclose and permit the inspection and copying of “reports or statements of experts made in connection with the particular case, including results of ... scientific tests, experiments, or *1170 comparisons.” See Abdool v. State, 53 So.3d 208, 219-20 (Fla.2010) (applying rule 3.220(d)(l)(B)(ii) to penalty phase proceedings and holding that appellant was required to provide the State with raw data from his mental health expert). Based on the plain language of rule 3.220(d)(l)(B)(ii), Ms. Kidder was required to disclose to the State the results of the scientific test Wuesthoff conducted on the blood sample.
Ms. Kidder urges this court to interpret rule 3.220(d)(l)(B)(ii) to require disclosure of a scientific test only when a defendant intends to call the expert who conducted the test as a witness. We believe that this interpretation would be contrary to the plain language of the rule. See Scipio v. State, 928 So.2d 1138, 1144 (Fla.2006) (“Because full and fair discovery is essential to these important goals, we have repeatedly emphasized not only compliance with the technical provisions of the discovery rules, but also adherence to the purpose and spirit of those rules in both the criminal and civil context.”).
Rule 3.220(d) provides as follows:
Defendant’s Obligation.
(1) If a defendant elects to participate in discovery, either through filing the appropriate notice or by participating in any discovery process, including the taking of a discovery deposition, the following disclosures shall be made:
(A) Within 15 days after receipt by the defendant of the Discovery Exhibit furnished by the prosecutor pursuant to subdivision (b)(1)(A) of this rule, the defendant shall furnish to the prosecutor a written list of the names and addresses of all witnesses whom the defendant expects to call as witnesses at the trial or hearing. When the prosecutor subpoenas a witness whose name has been furnished by the defendant, except for trial subpoenas, the rules applicable to the taking of depositions shall apply.
(B) Within 15 days after receipt of the prosecutor’s Discovery Exhibit the defendant shall serve a written Discovery Exhibit which shall disclose to and permit the prosecutor to inspect, copy, test, and photograph the following information and material that is in the defendant’s possession or control:
(i) the statement of any person listed in subdivision (d)(1)(A), other than that of the defendant;
(ii) reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons; and
(iii) any tangible papers or objects that the defendant intends to use in the hearing or trial.
(Emphasis added.)
Subsection (d)(1)(B)®, by referencing subsection (d)(1)(A), requires a defendant to provide the State with the statements of any person the defendant plans to call as a witness. Subsection (d)(l)(B)(iii) also specifically states that a defendant must provide to the State any tangible papers or objects that the defendant intends to use in a hearing or trial. Conversely, subsection (d)(l)(B)(ii) does not restrict the disclosure of reports of experts to only those experts a defendant plans to call as a witness. We conclude that the rule is clear and unambiguous in requiring a defendant to disclose the results of a scientific test like the one at issue in the present case, regardless of whether the defendant anticipates calling the person who conducted the test as a witness. See Weston TC LLLP v. CNDP Mktg. Inc., 66 So.3d 370, 375 (Fla. 4th DCA 2011) (“When a rule is clear, and unambiguous, courts will not look behind the rule’s plain language or *1171 resort to rules of construction to ascertain intent.”).[2]
C. Work Product
1. Federal and Civil Cases Involving Work Product
The Supreme Court first recognized the work product doctrine in a civil case, Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947), where the petitioner sought discovery of written and oral statements of witnesses in the respondent’s files, even though the identity of those witnesses was well known and their availability to the petitioner was unimpaired. The Court held that the petitioner’s attempt “to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party’s counsel in the course of his legal duties” without a showing of necessity or justification, fell outside the area of proper discovery and “contravenes the public policy underlying the orderly prosecution and defense of legal claims.” Id. at 510.
Several years later in United States v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the Supreme Court discussed the application of the work product doctrine in criminal cases, explaining that “[t]he interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.”
At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client’s case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.
Id. 422 U.S. at 238-39, 95 S.Ct. 2160.
Florida recognizes two forms of work product: opinion work product and fact work product. “Fact work product traditionally protects that information which relates to the case and is gathered in anticipation of litigation.” S. Bell Tel. & Tel. Co. v. Deason, 632 So.2d 1377, 1384 (Fla.1994) (citing State v. Rabin, 495 So.2d 257 (Fla. 3d DCA 1986)). In comparison, opinion work product “consists primarily of the attorney’s mental impressions, conclusions, opinions, and theories.” Id.
The distinction between the two forms of work product becomes important when disclosure is sought. Fact work product can be discovered upon a determination by an opposing party of need and undue hardship. Id. Conversely, “opinion work product generally remains protected from disclosure.” Id.
2. Opinion Work Product Defined by Rule 3.220
Rule 3.220 specifically defines and excludes from discovery certain materials in criminal cases. Rule 3.220(g)(1) states that the following matters are not subject to disclosure: “Work Product. Disclosure shall not be required of legal research or *1172 of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the prosecuting or defense attorney or members of their legal staffs.” This rule specifically describes opinion work product and excludes it from discovery in criminal cases. See id.
In Smith v. State, 873 So.2d 585, 587-88 (Fla. 3d DCA 2004), the court found that the provisions of rule 3.220(g)(1) sheltered a twenty-two page psycho-social report and addendum “prepared by defense counsel with the assistance of other members of the defense team, that is in narrative form and is based on medical records, witness interviews, and mental health evaluations.” The report contained “a summary of witness statements, italicizing certain portions, which unavoidably combined a selection process achieved through an interpretative filter that emphasized certain information over other, thus disclosing counsel’s opinions and strategy.” 873 So.2d at 588.
We conclude that the lab report containing the results of the scientific test Wuesthoff conducted on the blood sample does not meet the definition of work product in rule 3.220(g)(1).[3] The scientific report at issue was generated by Wuesthoff Toxicology Laboratory, not by defense counsel, and Ms. Kidder does not allege that the report contains the opinions, theories, or conclusions of her attorney or members of her attorney’s legal staff. See Bailey v. State, 100 So.3d 213, 217 (Fla. 3d DCA 2012) (rejecting appellant’s contention that raw data from the mental health expert who appellant intended to call as witnesses was work product).
3. Fact Work Product
Although rule 3.220 only includes in its definition of work product information that is typically considered opinion work product, it does address fact work product in two previously noted subsections. Subsection 3.220(d)(l)(B)(i) provides that a defendant must provide in discovery the statements of a person only if the defendant plans to call that person as a witness. Further, subsection 3.220(d)(l)(B)(iii) requires a defendant to provide tangible papers or objects only where the defendant intends to use such in a hearing or trial.
Conversely, subsection 3.220(d)(l)(B)(ii) specifically states that a defendant is required to disclose to the State a report of an expert, including results of scientific tests. This subsection does not require that the defendant anticipate calling the expert as a witness nor does it require the State to establish that it cannot obtain the information by any other means.[4] The Supreme Court of Florida in Abdool, 53 So.3d at 219-20, held that the appellant was required to disclose to the State raw data relied upon by the appellant’s mental health expert. After determining that rule 3.220 applies in capital cases both in the guilt phase and the penalty phase, the court noted “Tule 3.220 spells out very specific discovery obligations by both sides when the defendant elects to participate in discovery.’ ” Id. at 219-20 (quoting Kearse v. State, 770 So.2d 1119, 1127 (Fla. 2000)).
*1173 Although here we are not in the context of the penalty phase of a death eligible case, this case is similar in the material sought to be disclosed. In both instances, the reciprocal discovery process requires the disclosure of the data, and Abdool supports the trial court’s order to disclose. See Bailey, 100 So.3d 213. Therefore, in the context of criminal proceedings, blood test results are not protected by a general claim of work product privilege.
We are not persuaded by the cases Ms. Kidder cites from other jurisdictions. In People v. Spiezer, 316 Ill.App.3d 75, 249 Ill.Dec. 192, 735 N.E.2d 1017, 1028 (2000), the court interpreted a criminal discovery rule similar to Florida’s but concluded that it did “not believe that the drafters” of the rule specifically intended to exclude reports of nontestifying, consulting experts from the work product doctrine. United States v. Walker, 910 F.Supp. 861, 863 (N.D.N.Y.1995), involved the admissibility, not the discoverability, of evidence the government wished to present at trial from experts retained by the appellee who the appellee did not plan to call as witnesses and who were cumulative of the government’s experts. In State v. Mingo, 77 N.J. 576, 392 A.2d 590, 592 (1978), the court found that the State did not have a justification for calling the appellee’s handwriting expert as a witness at trial where it was capable of obtaining its own expert.
D. Fifth Amendment
Ms. Kidder also asserts that the disclosure of the blood alcohol report violates the protection afforded her by the Fifth Amendment’s privilege against self-incrimination. We disagree. The privilege is personal to the accused and does not apply to the chemist who conducted the blood alcohol analysis. See Nobles, 422 U.S. at 233-34, 95 S.Ct. 2160 (holding that “disclosure of the relevant portions of the defense investigator’s report would not impinge on the fundamental values protected by the Fifth Amendment”); Parkin v. State, 238 So.2d 817, 820 (Fla.1970) (“The constitutional privilege against self-incrimination in history and principle seems to relate to protecting the accused from the process of extracting from his own lips against his will an admission of guilt.”).
E. Sixth Amendment
Ms. Kidder further contends that compelling a defendant to provide the results of a scientific test performed by an expert who is not expected to testify would hinder the defendant’s trial preparation and therefore his or her right to the effective assistance of counsel afforded by the Sixth Amendment. She contends that whenever it is necessary for a defense attorney to seek an independent scientific test as part of the attorney’s preparation for trial, the attorney possibly will be creating an unfavorable witness. We do not find merit in this argument because an accused is under no obligation and correspondingly has no constitutional right to participate in the discovery process.
Ms. Kidder is correct that the Sixth Amendment to the United States Constitution provides an accused in every criminal prosecution the right to the assistance of counsel, which is intended “to ensure a fair trial.” Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To that end, the attorney has “a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.” Id. 466 U.S. at 688, 104 S.Ct. 2052.
Furthermore, the State has the duty to provide a defendant with favorable evidence upon request where the evidence is material to guilt and the failure of the State to do so violates the defendant’s due *1174 process rights. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, the Supreme Court has held that “[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one; ... ‘the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded....’” Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) (quoting Wardius v. Oregon, 412 U.S. 470, 474, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973)); see generally Taylor v. Illinois, 484 U.S. 400, 415, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (holding that the exclusion of a defense witness’s testimony as a sanction for a discovery violation did not violate the Compulsory Process Clause of the Sixth Amendment).
Florida has provided a procedure to engage in criminal pretrial discovery, and Ms. Kidder could have elected not to participate in the discovery process. See Fla. R. Crim. P. 3.220(a). By electing to participate in the discovery process, Ms. Kidder was able to obtain evidence in the State’s possession, more than that required by Brady. The second blood sample was originally in the possession of the State and the State could have had both blood samples analyzed. Ms. Kidder had the State’s evidence transferred to her for what her motion classified as an “independent analysis.” Nowhere in Ms. Kidder’s motion does she assert that the results of the laboratory test are for her sole use and protected from disclosure to the State. We fail to see how Ms. Kidder’s due process right to a fair trial has been impaired. See Commonwealth v. Paszko, 391 Mass. 164, 461 N.E.2d 222, 237 (1984) (concluding that criminal procedure rules favoring liberal discovery serves a truth-enhancing purpose that outweigh “any resulting inconvenience or potential disincentive to lawyers who obtain and preserve such statements in written form”).
Nevertheless, we recognize the decision of whether to engage in the discovery process may present defense counsel with a Hobson’s choice. To elect to participate in discovery allows an accused, such as Ms. Kidder, the ability to view the State’s evidence. In return, however, the State, as permitted by the discovery rule, is entitled to the same. While such an exchange may well promote a fair trial, for defense counsel charged with the duty to effectively assist the client, it may be difficult to reconcile the duty to defend with the duty to disclose. It is likely that the results of the second blood test will not aid Ms. Kidder but will aid the State. We can envision circumstances where counsel may not desire to engage in discovery under rule 3.220. However, the State’s lab report, similar to Wuesthoffs lab report which Ms. Kidder argues should be unavailable to the State, was made available to defense counsel. Ms. Kidder “is not constitutionally entitled to a discovery system that operates only to [her] benefit.” Paszko, 461 N.E.2d at 237.
III. CONCLUSION
Pursuant to rule 3.220(d)(l)(B)(ii), Ms. Kidder was required to disclose to the State the results of the scientific test Wuesthoff conducted on the blood sample, and consequently, the trial court’s discovery order did not depart from the essential requirements of law. We add that this result should not be construed as permitting the introduction of the results of the second blood test in the State’s case-in-chief. Other issues may yet remain, including but not limited to whether such evidence is cumulative and whether it would constitute improper bolstering.
We deny Ms. Kidder’s petition for writ of certiorari.
*1175 WALLACE, J., Concurs in the result with opinion.
ALTENBERND, J., Concurs with opinion.

. Because this case is being reviewed by this court via a certiorari proceeding, we do not have a full record on appeal and must rely on the appendix to the petition.

. We note that, in comparison, Federal Rule of Criminal Procedure 16(b)(1)(B) specifically requires a defendant to disclose the results of any scientific test or experiment only if "(i) the item is within the defendant’s possession, custody, or control; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness’s testimony.”

. It does not appear that Ms. Kidder requested the trial court to conduct an in camera review of the toxicology report.

. By contrast, Florida Rule of Civil Procedure 1.280(b)(5)(B) specifically provides that a party may only discover facts that are known to an expert hired in preparation for trial but who is not expected to be called as a witness at trial, only after demonstrating exceptional circumstances which make it impracticable to obtain such facts by other means.