569 A.2d 942

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ernest PORTER, a/k/a Theodore Wilson, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1988.

Decided Feb. 8, 1990.

164

George Henry Newman, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Philadelphia, Chief, Appeals Div., Michael Mc-Govern, Asst. Dist. Atty., Alan Sacks, Robert A. Graci, Chief, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

McDERMOTT, Justice.

The appellant was tried by a jury and found guilty of murder in the first degree,[1] robbery,[2] and possessing an instrument of crime.[3] After further deliberations that same jury rendered a verdict of death for the first degree murder conviction.[4] Sentence was deferred pending a court ordered psychiatric examination of the appellant and the disposition of his post-trial motions. A psychiatric evaluation was made, post-trial motions were denied and the judgment of sentence was entered on June 27, 1986. In addition to imposing the death sentence fixed by the jury, the sentencing judge imposed a consecutive sentence of 10 to 20 years on the robbery conviction and 2½ to 5 years on the conviction for possession of an instrument of crime. Appellant directly appealed the judgments of sentence.

The evidence in this case, like so many other examples that fill the courts, did not require an abstruse deduction to prove the appellant guilty. Those who bring a criminal purpose to the daily lives of others, as did the appellant here, must pass through that sticky web of the ordinary round of things. To alter them to fit a criminal purpose requires more than malice and a gun. It requires that the

1. 18 Pa.C.S., §§ 2501; 2502(a).
2. 18 Pa.C.S., § 3701.
3. 18 Pa.C.S., § 907.
4. 42 Pa.C.S., § 9711.

passerby, the late or early riser, the sleepless or ill neighbor, the returning party goer, house painter, roofer, locksmith, cement crew, sudden fire, clocks running slow or fast, and the other quotidian needs and purposes that tie us to the earth synchronize with their single purpose. As the appellant was to find, they rarely do. On the spring morning of April 27, 1986, all the normal things of a Saturday were unfolding when Mr. Raymond Fiss rose to begin the day at his beauty shop. He left home at 7:30 A.M., with thirty to fifty dollars to make change for his customers. For him, it was not just another Saturday. He was to go down to death. While he was driving the short distance to his shop, two other people were about that day. One, Angelina Spera, a neighbor directly across the street of his shop, was looking out her window. Another, Catherine Valente, a customer of Mr. Fiss, was walking to her Saturday appointment. She was to see, hear and positively identify the appellant. When Mr. Fiss was opening the door, Angelina Spera saw a black man push him into the shop and Mr. Fiss cry "Get the hell out of here." She called the police and returned to the window to see Catherine Valente walking toward the shop. As Mrs. Valente opened the door, she saw a man standing inside with a yellow bag in his hand. The man rushed past her saying, "I'll be back," got into Mr. Fiss's car parked at the curb and sped away. Both ladies gave a description of the killer to the police. The killer escaped, but more was to follow. Three days later, on April 30, 1985, three men robbed, at gun point, a jewelry store. During the robbery the jeweler activated a hidden alarm. The police arrived and chased the appellant by foot. As he ran he threw away a white bag. In the bag was a .38 caliber Colt revolver. That was the gun, according to ballistics, that killed Mr. Fiss. On May 3, 1985, the appellant was in the hands of the police and charged with the murder of Mr. Fiss.

The evidence at trial, if believed, and it was, was

damning and sufficient.[5] Mrs. Valente positively identified the appellant as the man in the store. She could, she said, because the shop was lighted by the sun. Mrs. Spera could not see the face of the man, but could describe him as about 25 years old, 5'8" and 145 lbs., which description fit the appellant. Beside the eyewitness identification of Mrs. Valente made with the bright inextinguishable April sun, and the description, given by Mrs. Spera to the police, the appellant left a fingerprint. To round the matter out in an orderly and understandable fashion, the Commonwealth began with the testimony of the deceased's wife, Mrs. Fiss. She told the jury her husband left with thirty to fifty dollars. The Commonwealth continued with the testimony of police officer Patrick Kent, who found him dead and broadcast the descriptions given by Mrs. Valente and Mrs. Spera, and then proceeded with the physician, Dr. Halbert Fillinger, who testified he died of a single fatal gunshot wound. The Commonwealth also called Norman Genoy, an evidence technician, who took photographs, made sketches and examined for latent fingerprints. He found a latent thumbprint on the exterior glass of the entrance door. To prove the identity of the print, the Commonwealth called a police fingerprint expert and in rebuttal an independent expert, originally retained by the appellant, to confirm the identity of the print. Both experts identified the print as appellant's. Appellant contends that calling the independent expert, Mr. Willis, in rebuttal, was prejudicial on two grounds. First, appellant had not contradicted the fingerprint evidence and second, that the expert was once his expert, who the appellant did not call. The expert was

5. It is the required practice of this Court in cases in which a death penalty has been imposed to review the sufficiency of the evidence supporting an appellant's conviction. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26–27, n. 3, 454 A.2d 937, 942, n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre,* 507 Pa. 299, 489 A.2d 1340 (1985).

called to buttress the evidence offered by Mrs. Valente, who the defense had sought to discredit. A court may permit evidence, in rebuttal, going beyond the narrow scope of contradicted testimony. *See Commonwealth v. Hickman,* 453 Pa. 427, 309 A.2d 564 (1973). The Commonwealth was entitled to support Mrs. Valente's identification with evidence of his fingerprint and indeed the appellant's own expert's opinion. It was not improper for the court to allow inquiry into Mr. Willis' prior retention by the appellant, who he could not serve consistent with his findings. In any case it was cumulative. The Commonwealth then called Vincent Gentile. Mr. Gentile was the proprietor of the jewelry store robbed three days later. He identified the appellant as the robber with the gun. Officer Kenneth Rossiter was called. He chased and identified the appellant as the one who threw away the bag with the gun. The gun was ballistically examined and testimony was offered by a ballistics expert that that gun fired the bullet that killed Mr. Fiss. In summary, the Commonwealth proved by eyewitness testimony, fingerprint and appellant's possession of the murder gun, that he was the robber and killer of Mr. Fiss. The evidence was more than sufficient.

Given that the evidence was sufficient, we turn now to whether its admission was legally proper. We shall do so, in light of the objections and claims of the appellant that the evidence was improperly admitted against him.

First, we shall address his contention that circumstances of the robbery of the jewelry store three days after the robbery and killing of Mr. Fiss was prejudicial. The appellant does not contend, as he cannot, that possession of a murder weapon three days after a murder is not admissible evidence probative of guilt. He complains that a description of the robbery by Mr. Gentile was outweighed by its prejudicial content, i.e. that Mr. Gentile and three of his customers were assaulted during the robbery. The appellant cites *Commonwealth v. Fuller,* 479 Pa. 353, 388 A.2d 693 (1978). Without further analysis of *Fuller,* it is clearly distinguishable because no issue of identification was in-

volved. Where the identification of the possessor of the gun is at issue, the why, how, where, when the gun was used all go to the proof of who possessed it. To tell less than all the circumstances because the alleged possessor was about a different crime, is to lessen the credibility of the occasion, to diminish the proof of one crime because he was committing another. The evidence that possession includes another crime is not offered to prove prior conduct but prior possession. That one includes the other is all the more reason to do neither and certainly not a reason to diminish the proofs of one. The learned trial judge made the distinctions between prior conduct and identification abundantly clear and the issue clarified as far as common sense can take it. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

█ Appellant also contends that Mrs. Valente's identification was tainted by failure to identify him in a photo array shown her on May 1, 1985, six days after the robbery-murder. Mrs. Valente identified the appellant when his picture appeared on a television news broadcast which appellant claims was intentionally displayed by the police. Faced with the inconsistency, Mrs. Valente testified she was afraid to identify on May 1, 1985, and that she saw, but did not hear the television report that the appellant had been arrested. Even if pretrial procedures might prove suggestive, her identification had sufficient independent basis. She saw the appellant in good lighting inside and outside the shop and gave the police a description on the scene that fit his description. She positively identified him at both the preliminary hearing and at trial. The trial judge weighed her testimony of her fear, her opportunity to see and know of whom she spoke and properly decided to admit her evidence.

█ Next appellant argues ineffective assistance by his counsel on seven separate occasions. First he argues counsel did not investigate or call two alibi witnesses, Harriet and Jesse Downs. The Downs were the parents of appellant's girlfriend. They allegedly would have testified the

appellant was at their home the night before and until an hour after the robbery-murder. Counsel relied on cross-examination to discredit identification witnesses and in fact called as the only witness for the defense, Mrs. Valente, in an attempt to discredit her testimony. The alibi witnesses were not called. Counsel had a statement from Mr. Downs in which Downs admitted the appellant had a gun and that they did drugs together. Defense counsel's decision not to call them cannot be faulted when their testimony could be so easily subverted. *Commonwealth v. Robinson,* 487 Pa. 541, 410 A.2d 744 (1980). (The failure to call possible witnesses does not constitute ineffective assistance of counsel *per se.*) *Commonwealth v. Smallwood,* 497 Pa. 476, 442 A.2d 222 (1982) (the decision to call or not to call a witness is a matter of trial strategy.)

■ Appellant next contends he was denied a charge on the general intent to commit a crime. There is no general intent, there is a specific intent required to commit a specific crime. The appellant does not deny that the specific intent to commit each crime charged was properly charged. The trial judge sufficiently defined the underlying concept as "one acts with intent when it is his conscious object to cause a particular result" ... Secondly, intent was not in dispute because appellant's defense, such as it was, was that he was not the killer.[6]

■ Appellant next contends he was prejudiced when the prosecutor, without objection by defense counsel, referred to him as a "cold blooded killer." Such characterizations are not favored, and in appropriate cases have been properly condemned as improper personal expressions of belief in guilt. In the case at hand, the prosecutor said the evidence argued a "cold blooded" killing. It would be hard to

---

6. *See Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984) (improper instruction on duress irrelevant because appellant did not raise that defense); *Commonwealth v. Simmons,* 504 Pa. 565, 475 A.2d 1310 (1984) (where a self-defense instruction was not warranted by the evidence, counsel was not ineffective for failing to object to a defective charge of self-defense).

believe, given the clear palpable evidence offered here, that such expression was unduly prejudicial.

He next argues that his counsel was ineffective for failing to determine on *voir dire* whether or not prospective jurors held fixed opinions in favor of the death penalty, or whether they would be able to impose a life sentence for a conviction of murder in the first degree. However, the underlying claim upon which the allegation of ineffectiveness is based is without merit. In *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987), we held that "the mere fact that counsel may not have posed the specific question as to whether a prospective juror would vote for a sentence of life imprisonment in an appropriate case does not justify the conclusion that counsel failed to assure that a fair and impartial jury was selected."

Appellant contends that the court erred by telling the jury on five occasions during his charge, "If the court is mistaken on the law, that will be corrected on review or appeal." How this statement prejudiced the appellant, we cannot say. It merely emphasized the importance of the jury's role in applying the law given them by the trial judge.

Finally, appellant contends that counsel was ineffective for failing to timely request appellant's psychiatric records for use at the penalty phase. If counsel failed, it was because the existence of such records was hidden from him. At all events there were no such records that appellant did or ever suffer from a mental defect or injury. Prior to sentencing, the trial court had appellant examined. The examination established that there was then and none before, evidence of thought disorder or psychosis. The court allowed the appellant's mother to testify as to his mental condition. She did as best she could. The court did not err in refusing a continuance when there was no showing that a report favorable to the contention existed. The evidence of appellant's guilt is clear and palpable in eyewitness testimony, fingerprint and possession of the murder gun. Against such evidence, counsel did all that could be

done, the learned trial judge conducted a full and fair hearing. We find no error worthy of reversal.

■ Finally, we turn our attention now, as we must, to the proportionality of appellant's sentence. Because the jury found no mitigating circumstances and one aggravating circumstance, we sustain the conviction and affirm the sentence of death. Based on our review of the statistical data provided by the Administrative Office of the Pennsylvania Courts, *see Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984) *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we conclude that the sentence of death was not disproportionate to the penalty imposed in similar cases. 42 Pa.C.S. § 9711(h)(3)(iii).

Accordingly, the judgment of sentence is affirmed.

STOUT, Former Justice, did not participate in the decision of this case.