876 A.2d 939

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David R. KENNEDY, Appellant.**

Supreme Court of Pennsylvania.

Argued March 1, 2004.

Decided June 21, 2005.

Cynthia L. Reed, Esq., William F. Manifesto, Esq., Pittsburgh, for David R. Kennedy.

Michael Wayne Streily, Esq., Pittsburgh, for Commonwealth of Pennsylvania.

BEFORE: RALPH J. CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

In this appeal by allowance, our Court is presented with two issues: whether the challenged trial court order, in which the court denied Appellant's Motion to Quash and/or Withdraw Subpoena, is an appealable collateral order; and, if so, whether the court erred in denying Appellant's motion. For the reasons expressed below, we hold that the trial court's order is an appealable collateral order and that the court erred when it denied Appellant's Motion to Quash and/or Withdraw Subpoena. Accordingly, we vacate the order of the Superior Court, reverse the order of the trial court, and remand the case to the trial court for further proceedings.

The facts relevant to this appeal are not in dispute. On March 27, 1977, the body of Debbie Capiola was found in the woods in Robinson Township, close to the border of Allegheny and Washington Counties. Upon discovery of the victim's body, blue jeans were found wrapped around her neck. An autopsy revealed that the victim's cause of death was strangu-

lation.  It was later determined that the jeans had a spermatozoa stain on them.

In early 2000, the Commonwealth submitted the jeans and a blood sample from Appellant, which was obtained pursuant to a search warrant, to Cellmark Diagnostics, Inc. ("Cellmark") for DNA analysis.  The results of the test inculpated Appellant.  Thereafter, the Pennsylvania State Police obtained an arrest warrant for Appellant, and Appellant surrendered himself to the State Police.  The Commonwealth subsequently charged Appellant with one count of criminal homicide, 18 Pa.C.S. § 2501(a).

Appellant's trial was set to begin in August of 2001 in the Court of Common Pleas for Allegheny County, Criminal Division.  Prior to trial and in response to Appellant's informal request for discovery, the Commonwealth provided Appellant with the DNA test results from Cellmark.  Appellant then filed an Omnibus Pre-trial Motion, which included, in pertinent part, a Motion for Pre-trial Discovery in which he sought permission to have the blue jeans sent to The Bode Technology Group, Inc. ("Bode") for DNA analysis.[1]  In addition, Appellant filed a Motion for an Order Authorizing Release of Evidence for Independent Testing in which he requested that the Commonwealth be required to package the jeans and to send them to Bode for testing.  The trial court granted these motions and permitted Appellant to have a blood sample drawn and sent to Bode as well.  As a result, the jeans and blood sample were delivered to Bode.  Bode completed its testing procedures and returned the jeans to the Commonwealth.

On August 6, 2001, the Commonwealth filed a "Petition for Certificate Directing Appearance of Out–of–State Witness and a Memorandum of Law in Support Thereof" ("Petition") pursuant to the Uniform Act to Secure the Attendance of Witnesses Within or Without a State in Criminal Proceedings, 42 Pa.C.S. § 5961 et seq.  In the Petition, the Commonwealth sought to have the court issue a Certificate directing Suzanna

1.  Bode is a DNA testing facility located in Springfield, Virginia.

Ulery, an employee of Bode, "to appear and testify as a witness" in Appellant's trial. Petition at ¶ 8. In addition, the Commonwealth asked the court to direct the following: "a copy of any and all data, test results and/or reports compiled by [Bode] when conducting its analysis of the evidence in question to be forwarded to the Commonwealth." Petition at ¶ 8. According to the Petition, the Assistant District Attorney for Allegheny County contacted Ms. Ulery in August of 2001 and requested a copy of her report concerning the DNA analysis of the relevant evidence. Additionally, the Commonwealth asserted that Ms. Ulery informed the Assistant District Attorney that no report was ever written and that she was unable to provide the Commonwealth with the results of her analysis without the consent of Appellant's counsel, which counsel had refused to provide.

It also appears from the record that the Commonwealth filed a second Petition ("Second Petition"), which it simply entitled "Petition for Certificate Directing Appearance of Out–of–State Witness." This Second Petition contains less content than the first, and the Commonwealth did not attach a Memorandum of Law to the Second Petition. In the Second Petition, the Commonwealth averred that Ms. Ulery's attendance or the attendance of a Bode representative is required at Appellant's trial, that Ms. Ulery or a Bode representative is a material witness in this case, and that by enacting the Uniform Act to Secure Attendance of Witnesses Within or Without a State, the Commonwealth of Virginia "has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or grand jury investigations commenced or about to commence in the Commonwealth of Pennsylvania." Second Petition at ¶¶ 2, 3, and 7. The record is not clear as to when the Commonwealth filed the Second Petition.

On August 7, 2001, the trial court signed a Certificate. The Certificate indicates that Ms. Ulery or a Bode representative is "a necessary and material witness for the Commonwealth of Pennsylvania in the presentation of their case in chief. . . ."

Certificate at ¶ 3. In delineating the purpose of the Certificate, the court stated the following:

> That this certificate is made for the purposes of being presented to a Judge of the Superior Court, Criminal Division, in and for the County of Fairfax, Commonwealth of Virginia; where Susanna R. Ullery is, for proceedings to compel Suzanna Ullery to *attend and testify* at the trial in the criminal prosecution before this court in the Commonwealth of Pennsylvania on August 9, 2001 at 9:30 as a material witness in that trial.

Certificate at ¶ 7 (emphasis added).

Appellant then filed a Motion to Quash and/or Withdraw Subpoena ("Motion to Quash"). According to this Motion, Appellant's counsel provided the Commonwealth with Appellant's witness list and informed the Commonwealth that Appellant did not intend to call any expert witness at trial. In the Motion to Quash, Appellant asserted that "[t]he purpose of the Commonwealth's subpoena at issue was to subpoena the records and reports of [Bode], as well as to secure the results of DNA testing, which [Bode] has performed as an agent to assist defense counsel in providing legal services and advice to [Appellant] and to assist [counsel] in preparation for trial." Motion at ¶ 6. As such, Appellant opposed the issuance of the subpoena based on the attorney-client privilege, the work-product doctrine, and Appellant's constitutional rights to effective assistance of counsel and against compelled self-incrimination. The trial court denied Appellant's Motion to Quash on the same day.[2] In response, Appellant filed a Notice of Appeal, informing the trial court that he was appealing the court's order denying his Motion to Quash.

In his appeal to the Superior Court, Appellant argued that the challenged trial court order is appealable as a collateral

---

**2.** Following the trial court's denial of Appellant's Motion to Quash, the Commonwealth filed an "Amended Petition for Certificate Directing Appearance of Out-of-State Witness and Memorandum of Law in Support Thereof." The court signed a Certificate pursuant to the Amended Petition on August 14, 2001.

order pursuant to Pennsylvania Rule of Appellate Procedure 313. Rule 313, entitled "Collateral Orders," states as follows:

(a) **General Rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

(b) **Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

In an unpublished opinion, a majority of the Superior Court panel disagreed with Appellant that the trial court order meets all of the requirements for a collateral order under Rule 313. The majority assumed that the order meets the first two requisites for a collateral order under Rule 313, *i.e.,* that the order is separable from and collateral to the main cause of action and that the right involved is too important to be denied review. The majority, however, found that the order fails to meet the Rule's final requirement for a collateral order, *i.e.,* that if review of the question presented is postponed until final judgment in the case, then the claim will be irreparably lost. Based on this determination, the majority quashed Appellant's appeal as interlocutory.

The Honorable Judge Richard B. Klein filed a dissent. The dissent would have found that the challenged order is collateral and, thus, appealable under Pa.R.A.P. 313. As to the legal issue underlying the order, the dissent would have determined that the trial court could not compel Ms. Ulery to testify for the Commonwealth and, therefore, would have reversed the trial court's order denying Appellant's Motion to Quash.

Following the Superior Court's quashal of Appellant's appeal, Appellant petitioned this Court for allowance of appeal, which we granted.[3]

---

**3.** The issues we address in this appeal raise questions of law. Therefore, our standard of review is *de novo,* and to the extent necessary, the

In his appeal to our Court, Appellant argues that the challenged trial court order meets the three requirements for a collateral order under Pa.R.A.P. 313. Moreover, Appellant contends that the Superior Court's determination to the contrary is at odds with this Court's decision in *Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547 (1999). Interestingly, the Commonwealth agrees with Appellant.

Regardless of the parties' agreement as to the appealability of the challenged order, whether an order is appealable as a collateral order under Rule 313 is an issue of this Court's jurisdiction to entertain an appeal of such an order. Therefore, we must make an independent determination as to whether the order is appealable pursuant to Rule 313.

An appeal from a collateral order may be taken as of right where the order is separable from and collateral to the main cause of action, the right involved is too important to be denied review, and the question involved is such that if review is postponed, the claim will be irreparably lost. Pa.R.A.P. 313. The Rule 313 issues raised by this matter are akin to those raised and addressed in our decisions in *Commonwealth v. Dennis,* 859 A.2d 1270 (Pa.2004), and *Ben, supra.*

In *Dennis* and *Ben,* we held that if the resolution of an issue concerning a challenged trial court order can be achieved independent from an analysis of the merits of the underlying dispute, then the order is separable for purposes of determining whether the order is a collateral order pursuant to Rule 313. *Dennis,* 859 A.2d at 1277–78; *Ben,* 729 A.2d at 551–52. The issue concerning the challenged trial court order in the matter *sub judice* is whether the work-product doctrine, as well as the other rights and privileges asserted by Appellant, bars the Commonwealth from calling as a witness an agent hired by a defense attorney in preparation for trial where the defendant does not intend to call the agent at trial or to utilize materials prepared by the agent as evidence at trial, thus precluding a trial court from requiring the agent's attendance

scope of review is plenary. *See Buffalo Township v. Jones,* 571 Pa. 637, 813 A.2d 659, 663 n. 4 (2002).

and testimony at the defendant's trial. In our view, there is no question that resolution of this issue can be achieved independent from an analysis of whether Appellant is guilty of criminal homicide. We, therefore, conclude that the issue is separable for purposes of determining whether the order is collateral under Pa.R.A.P. 313.

Next, we turn to the "importance" element of Rule 313. An issue is important under Rule 313 if the issue implicates rights deeply rooted in public policy and impacts on individuals other than those involved in the litigation of that case. *Dennis,* 859 A.2d at 1278; *see Ben,* 729 A.2d at 552. In *Dennis,* we found that a party's right to exercise the protections of the work-product doctrine is an important right deeply rooted in public policy. *Dennis,* 859 A.2d at 1278. We also determined that the issue of whether the work-product doctrine shielded a prosecutor's *voir dire* notes from discovery impacted on individuals other than the litigants in that case. *Id.* For these reasons, we held that the issue was important for the purposes of a collateral order and Rule 313. *Id.*

In this case, similar to *Dennis,* the issue implicates, *inter alia,* the work-product doctrine. Additionally, we find that the issue impacts on individuals other than the litigants due to the fact that the trial court ruling in this case will affect the manner in which defense attorneys prepare for trial. Moreover, this issue provides our Court with the opportunity to speak to the question of whether the rights and privileges asserted by Appellant bars the Commonwealth from calling as a witness an agent hired by a defense attorney. Accordingly, we find that the claims raised by Appellant meet the importance element of Rule 313.

Lastly, we must examine the "irreparably lost" element of Pa.R.A.P. 313. This Court has stated that "[t]here is no effective means of reviewing[,] after a final judgment[,] an order requiring the production of putatively protected material." *Id.* at 1279 (citing *Ben,* 729 A.2d at 552). The order at issue in *Dennis* required the production of documents that the Commonwealth contended were protected by the work-product doctrine. *Id.* We ultimately determined that "the Com

monwealth's assertion of work-product privilege in the case *sub judice* will be irreparably lost if we do not permit collateral review here." *Id.*

In this matter, the trial court ordered Ms. Ulery "to attend and testify" at Appellant's trial. Certificate at ¶ 7; *see* pg. 4, *supra.* As such, the court has ordered the production of putatively protected "material," *i.e.,* Ms. Ulery. Therefore, in accordance with *Dennis,* we find that Appellant's assertion of, *inter alia,* the work-product doctrine will be irreparably lost if we do not permit collateral review at this juncture.

We, thus, hold that the relevant trial court order meets the three requirements for a collateral order, that appellate review of the issue concerning the order is appropriate pursuant to Pa.R.A.P. 313, and that the Superior Court erred in quashing Appellant's appeal as interlocutory. Due to its resolution of the appealability of the trial court order, the Superior Court did not reach the merits of Appellant's claims. The parties, however, have briefed to this Court their respective arguments in regard to Appellant's claims. Hence, for sake of judicial economy, we will address these claims. *Ben,* 729 A.2d at 552–53.

As stated above, Appellant avers that the trial court's decision to subpoena Ms. Ulery violates the attorney-client privilege, the work-product doctrine, and his constitutional rights to effective assistance of counsel. Appellant further contends that there are no provisions in the Pennsylvania Rules of Criminal Procedure that would allow for the Commonwealth's "discovery of the opinions or conclusions of a non-witness expert retained by the defense." Appellant's Brief at 15. In closing, Appellant asserts that no criminal defense attorney "should be required to fear that, by exploring the possibility of scientific exculpation of a client, he or she might be driving another nail into the client's coffin." Appellant's Brief at 23. As such, Appellant urges this Court to reverse the trial court's order denying his Motion to Quash.

In its argument against Appellant's claims, the Commonwealth concedes that the issue of whether the trial court's

decision in this case violates the rights and privileges asserted by Appellant "is certainly a difficult one." Commonwealth Brief at 14. In short, the Commonwealth's argument can be fairly summed up as follows: "Either [*Commonwealth v. Porter*, 524 Pa. 162, 569 A.2d 942 (1990) ] is good law or it isn't." Commonwealth Brief at 40. The Commonwealth contends that *Porter* still is good law; however, the Commonwealth frankly submits that "[w]hether *Porter* can withstand analysis under the work-product doctrine or the 6th Amendment is a decision which this Court will have to resolve." Commonwealth Brief at 40.

Thus, we are faced with determining whether a court can compel an expert, who was originally hired by a criminal defendant's attorney in order to prepare for the defendant's trial, to attend and testify at a defendant's trial, where the defendant does not plan on calling the expert at trial or using any materials that the expert completed as evidence at trial. Guided by our Rules of Criminal Procedure, we find that this issue can be resolved under the work-product doctrine.

The Supreme Court of the United States first set out the work-product doctrine in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In *Hickman*, the Court stressed the importance of the fact that during preparation for clients' cases, attorneys need a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510–11, 67 S.Ct. 385. The Court noted that an attorney's work compiled in preparation for a client's trial "is reflected [ ] in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways.…" *Id.* at 511, 67 S.Ct. 385. The Court determined that under most, but not all, circumstances, these materials should be protected from discovery. *Id.* For these reasons, the High Court "recognized a qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *Nobles*, 422 U.S. 225, 237–38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (citing to *Hickman*, 329 U.S. at 508, 67 S.Ct. 385).

In *United States v. Nobles, supra,* the United States Supreme Court expanded the work-product doctrine to protect materials prepared by agents of attorneys in contemplation of clients' trials. Additionally, the Court recognized the significance of the protections of the doctrine in the criminal setting. *Nobles,* 422 U.S. at 238, 95 S.Ct. 2160. The *Nobles* Court summarized the work-product doctrine as follows:

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system.

*Id.* The Court in *Nobles* went on to explain that "[o]ne of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *Id.* at 239, 95 S.Ct. 2160. The Court, therefore, found it necessary that "the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* The Court emphasized, however, that the work-product doctrine is not absolute but, rather, is a qualified privilege that may be waived.[4] *Id.*

In the context of pre-trial discovery in criminal matters, this Court adopted the substance of the general work-product doctrine as announced in *Hickman.* Pennsylvania Rule of Criminal Procedure 573(G), entitled "Work Product," shields attorneys' work-product from discovery and provides, in full, that

> [d]isclosure shall not be required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the attorney for the Commonwealth or the attorney for the defense, or members of their legal staffs.

4. For instance, in *Nobles,* the Court determined that, at trial, when the defendant elected to call a witness who had prepared a report for the defendant prior to trial, the defendant "waived the [protections of the work-product doctrine] with respect to matters covered in [the witness'] testimony." *Nobles,* 422 U.S. at 239, 95 S.Ct. 2160.

Rule 573(G) does not state, as the *Nobles* Court did, that the protections afforded to attorneys' work-product under this Rule extend to the work-product of agents of defense attorneys.

■ In order to determine whether, in the context of discovery, the protections of the work-product doctrine extend to the work-product of agents of criminal defense attorneys, we turn to Pa.R.Crim.P. 573(C), which delineates what the defense must disclose to the Commonwealth and what a trial court has the discretion to require the defense to disclose to the Commonwealth. When we read Rule 573(C), we find that the Rule allows the Commonwealth to discover the work-product of agents of defense attorneys, but only in very limited circumstances.

Under Pa.R.Crim.P. 573(C)(2)(a)(i),[5] a trial court has the discretion to require a criminal defendant to turn over results and reports of scientific testing, such as DNA testing, compiled by a third-party for the defendant when, *inter alia,* the defendant intends on using these materials as evidence in chief or the defendant plans on calling the third-party who prepared the materials as a witness at trial. Pa.R.Crim.P. 573(C)(2)(a)(i); *see Commonwealth v. Breakiron,* 524 Pa. 282, 571 A.2d 1035, 1040 (1990)(discussing former Pa.R.Crim.P. 302(C)(2)(a), which became current Pa.R.Crim.P. 573(C)(2)(a), and stating that "the Commonwealth, subject to the court's

**5.** Rule 573(C)(2)(a)(i) states as follows:

(2) *Discretionary with the court:*

(a) In all court cases, if the Commonwealth files a motion for pretrial discovery, upon a showing of materiality to the preparation of the Commonwealth's case and that the request is reasonable, the court may order the defendant, subject to the defendant's rights against compulsory self-incrimination, to allow the attorney for the Commonwealth to inspect and copy or photograph any of the following requested items:

(i) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, that the defendant intends to introduce as evidence in chief, or were prepared by a witness whom the defendant intends to call at the trial, when results or reports relate to the testimony of that witness, provided the defendant has requested and received discovery under paragraph (B)(1)(e);

exercise of its sound discretion, may discover the results of these examinations or reports of such examinations, *but only when the defendant intends to use these materials in his case in chief*")(emphasis added). Additionally, a court has the discretion to require an expert, who has conducted an examination or test for a defendant but who has not completed a report for the defendant, to prepare (and the defendant to disclose) a report, which must provide, among other things, the subject matter on which the expert is expected to testify and a summary of the expert's opinion. Pa.R.Crim.P. 573(C)(2)(b).[6] A court's discretion to order the production of such a report is, again, dependent upon whether the defendant intends on calling the expert as a witness in the criminal proceedings. *Id.* Thus, generally speaking, our Rules of Criminal Procedure protect the work-product of agents hired by defense attorneys from discovery, and Rule 573(C) qualifies this protection.

While our Rules of Criminal Procedure generally protect the work-product of agents hired by defense attorneys, these Rules only apply to pre-trial discovery. They do not address whether the work-product doctrine bars the Commonwealth from calling such an agent to testify at trial. The Commonwealth contends that our decision in *Porter, supra,* allows the Commonwealth to call Ms. Ulery as a rebuttal witness. We, therefore, will consider the applicability of *Porter* to the issue raised by Appellant.

Porter was convicted of, *inter alia,* first-degree murder, and for this conviction, he was sentenced to death. *Porter,* 569 A.2d at 943. Prior to Porter's trial, investigators discovered a latent fingerprint at the murder scene, and at trial, the Commonwealth called as witnesses a police fingerprint expert

---

**6.** Rule 573(C)(2)(b) states as follows:

(2) *Discretionary with the court:*

(b) If an expert whom the defendant intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare and the defendant disclose a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

and, in rebuttal, an independent fingerprint expert who the defense originally had retained. *Id.* at 944–45. Both witnesses identified the print as belonging to Porter. *Id.* at 945.

In his appeal to this Court, Porter argued that allowing the Commonwealth to call the independent expert as a rebuttal witness was prejudicial to him because he did not contradict the Commonwealth's fingerprint evidence and because he had retained the expert but did not call him as a witness at trial. *Id.* In response to these claims, our Court merely stated the following:

> The Commonwealth was entitled to support [a witness'] identification [of the appellant] with evidence of [the appellant's] fingerprint and indeed the appellant's own expert's opinion. It was not improper for the court to allow inquiry into [the expert's] prior retention by the appellant, who he could not serve consistent with his findings. In any case[,] it was cumulative.

*Id.* Although we found no reversible error in the trial court's decision to allow the Commonwealth to call the expert as a witness at trial, we did not discuss whether such a finding would survive scrutiny under the various claims presently raised by Appellant. Therefore, our decision in *Porter* offers us little insight into the answers to the questions before us today.[7]

■ While we acknowledge that the protections of the work-product doctrine traditionally have attached to the discovery of tangible materials prepared in anticipation of trial, we find that when a criminal defense counsel hires an agent in

---

7. In addition to questioning whether *Porter* is good law, the Commonwealth also asserts that in reviewing the issue before our Court, we must consider our decision in *Commonwealth v. Jones*, 546 Pa. 161, 683 A.2d 1181 (1996). Prior to trial, Jones hired a psychiatrist to evaluate him, but ultimately decided not to call the psychiatrist at trial. *Id.* at 1193. Instead, the Commonwealth offered the psychiatrist's testimony in rebuttal. *Id.* On appeal to our Court, Jones challenged the relevancy of this testimony and the psychiatrist's qualifications to offer this testimony. *Id.* Jones, however, did not raise an issue that even remotely resembles the claims raised by Appellant in the current appeal, nor did we discuss such an issue in *Jones*. Therefore, *Jones* is irrelevant to our analysis in this appeal.

order to prepare for trial and does not plan on calling the agent as a witness at trial or to utilize materials prepared by the agent as evidence at trial, a practical application of the doctrine to trial in criminal matters bars the Commonwealth from calling such an agent as a witness on its behalf, unless the Commonwealth "first makes a showing of substantial need of that testimony and [an] inability to obtain the substantial equivalent of that testimony without undue hardship." *United States v. Walker,* 910 F.Supp. 861, 864 (N.D.N.Y.1995). There are multiple reasons why this Court adopted, in Rule 573, the protections of the work-product doctrine in the context of criminal discovery. Most pertinent to this case, we agree with the proposition that the doctrine "promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Westinghouse Electric Corporation v. Republic of the Philippines,* 951 F.2d 1414, 1428 (3rd Cir.1991)(citing *Hickman,* 329 U.S. at 510–11, 67 S.Ct. 385 and *United States v. AT & T,* 642 F.2d 1285, 1299 (C.A.D.C.1980)). We also agree with the United States Supreme Court that "the concerns reflected in the work-product doctrine do not disappear once trial has begun. Disclosure of an attorney's efforts at trial, as surely as disclosure during pretrial discovery, could disrupt the orderly development and presentation of his case." *Nobles,* 422 U.S. at 239, 95 S.Ct. 2160.[8]

In our view, the same holds true at trial regarding the disclosure of the efforts of an agent retained by a criminal defense attorney. If the Commonwealth could simply call an agent, who the defense had hired in preparation for trial, as a witness to testify as to the efforts that the agent provided to the defense, then the Commonwealth could circumvent the purpose of the work-product doctrine, as stated above, and that of our rules of discovery for criminal cases. In other words, if we were to allow the Commonwealth to call such an agent as a witness, then the mission of a criminal defense

**8.** Due to the fact that the defendant in *Nobles* waived the protections of the work-product doctrine, the Court did not "delineate the scope of the doctrine at trial...." *Nobles,* 422 U.S. at 239, 95 S.Ct. 2160.

attorney to investigate thoroughly the evidence against his or her client would be unjustifiably hampered. Criminal defense attorneys would find themselves in the unenviable position of independently investigating evidence that may exonerate their clients, while, at the same time, risking the creation of evidence against their clients. *See Walker,* 910 F.Supp. at 866 (agreeing with the New Jersey Supreme Court that "[a] defense attorney should be completely free and unfettered in making a decision as fundamental as that concerning retention of an expert to assist him.... If the confidentiality of that advice cannot be anticipated, the attorney might well forego seeking such assistance to the consequent detriment of his client's cause") (citation omitted).

In order to avert the circumvention of the purpose of the work-product doctrine and of our rules governing discovery in criminal matters, we hold that a practical application of the work-product doctrine to trial in criminal proceedings prevents the Commonwealth from calling as a witness an agent who the defense hired in preparation for trial but decided not to call as a witness at trial or to use the materials prepared by the agent as evidence at trial, unless the Commonwealth can show a substantial need for such testimony and an inability to obtain the substantial equivalent of such testimony without undue hardship.[9] Consequently, absent these showings, a trial court may not compel such testimony. *See id.* at 864–67(holding that a practical application of the work-product doctrine supported the court's conclusion that "the government should be precluded from eliciting testimony from the defenses' experts concerning the efforts they undertook at the request of defendants' attorneys, or the opinions and conclu-

---

**9.** In *Porter,* we found that the testimony offered by the expert witness called by the Commonwealth, but originally retained by the defendant, was cumulative. Therefore, our determination that the expert's testimony did not constitute reversible error can be premised on a finding of harmless error. We did, however, state that the Commonwealth was entitled to call the defendant's expert to support the Commonwealth's identification witness, despite the fact that the defendant decided not to call the witness on his behalf. Consequently, under our holding today, *Porter* is overruled to the extent that we held that the Commonwealth was permitted to call a defendant's expert, who the defendant did not call on his or her behalf, as a witness at trial.

sions they developed at the behest of defendants' attorneys, unless the government first makes a showing of substantial need of that testimony and inability to obtain the substantial equivalent of that testimony without undue hardship"); *State v. Dunn,* 154 N.C.App. 1, 571 S.E.2d 650, 660 (N.C.Ct.App.2002)(concluding that the trial court erred by, among other things, unnecessarily breaching the work-product doctrine when the court allowed the State to compel testimony from experts hired by the defense, where the defense did not plan to call the experts as witnesses at trial); *People v. Spiezer,* 316 Ill.App.3d 75, 249 Ill.Dec. 192, 735 N.E.2d 1017, 1025 (2000)(finding that the work-product doctrine prohibited the prosecution from "discovering the identity and reports of non[-]testifying experts retained by the defense and [ ] from calling such experts to testify at trial"); *Commonwealth v. Noll,* 443 Pa.Super. 602, 662 A.2d 1123, 1127 (1995)(holding that the work-product doctrine, *inter alia,* barred the Commonwealth from calling an expert accident reconstructionist, originally hired by the defense, as a witness at trial).[10]

In this matter, the Commonwealth concedes that it "has the blue jeans, has had them tested, and is prepared to present its own expert testimony." Commonwealth Brief at 14. Therefore, the Commonwealth cannot make a showing of substantial need and undue hardship as to the testimony of Ms. Ulery or any other representative from Bode. Accordingly, we find that the trial court abused its discretion by issuing a subpoena compelling Ms. Ulery to attend and testify at Appellant's trial. Thus, the court erred in denying Appellant's Motion to Quash.

For these reasons, we vacate the order of the Superior Court, reverse the order of the trial court, and remand the case to the trial court for further proceedings consistent with this opinion.

**10.** Because we find that the work-product doctrine disposes of the issue in this case, we decline to address Appellant's attorney-client privilege argument. For this reason and because "a court should not reach [a] constitutional issue if the case can properly be decided on non-constitutional grounds," *P.J.S. v. Pennsylvania State Ethics Commission,* 555 Pa. 149, 723 A.2d 174, 176 (1999), we will also not reach the merits of Appellant's Sixth Amendment constitutional claim.

226

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion.

Justice CASTILLE, concurring.

I concur in the Majority's acceptance of jurisdiction over this matter and its mandate, which vacates the order of the Superior Court and remands this case to the trial court for further proceedings. I write separately, however, because my view of the question of appealability differs significantly from that expressed by the Majority.

At the root of this appeal is the Commonwealth's petition of August 6, 2001, which sought a certificate directing the defense's out-of-state expert, Suzanna Ullery, to "appear and testify" at trial and the expert's employer, Bode Technology Group, to forward to the Commonwealth "a copy of any and all data, test results, and/or reports compiled by the Bode Technology Group when conducting its analysis of the evidence in question."[1] Petition at ¶ 8. Notably, however, the proposed certificate, which was attached to the petition, did not direct production of any documents or reports. In any event, the trial court did not sign or adopt the proposed certificate, nor did it otherwise rule upon the Commonwealth's requests. The Commonwealth's second petition was substantially scaled-down and did not seek production of any reports, data, or results. The second proposed certificate directed only the attendance and testimony of Ms. Ullery at trial. On August 7, 2001, the trial court signed the second proposed certificate, pursuant to the Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings, 42 Pa.C.S. § 5961, et seq. However, as the Majority notes, the trial court **did not** direct defense counsel to disclose to the Commonwealth any information respecting Ullery or the DNA testing that Bode had conducted. The trial court then denied appellant's motion to quash the certificate, and that denial is the order which is the subject of this appeal.

1. The witness's name is variously spelled "Ullery" and "Ulery." The spelling in text follows that employed in the court's August 7, 2001 order.

Unfortunately, the true nature and scope of the trial court's certificate here apparently has been lost upon the parties and the lower courts. Appellant appears from the outset to have misapprehended the certificate, as he argued in his motion to quash that the purpose of the certificate "was to subpoena the records and reports of the Bode Technology Group, as well as to secure the results of any DNA testing." Motion at ¶ 6. On appeal to this Court, appellant continues to miss the mark with his argument, urging, at various points in his brief, the privileged nature of: the results of Bode's DNA testing, *see* Appellant's Brief at 9, 15, 22; "the records [and] reports prepared by Bode," *id.* at 14; and Ms. Ullery's expert opinions, *id.* at 14–15. The Commonwealth also seems to misperceive the actual content of the mere witness-appearance certificate granted in its favor—which notably was drafted by the Commonwealth—repeatedly insisting upon the non-privileged nature of Bode's "DNA test results." Commonwealth Brief at 15, 20, 29.[2]

Adding to the confusion created by the parties' off-point arguments are the opinions of the lower courts. Although the trial court recognized that "the Commonwealth's Certificate does not seek any written materials from Bode, but rather the testimony of Ms. Ul[l]ery," it went further in its opinion, offering that: "[E]ven if Ul[l]ery appears at trial with any writings produced incidental to the DNA testing of the jeans, i.e., 'test results and materials in support thereof relative to [the] analysis conducted by Bode,' ... there is presently nothing ... to suggest such writings would be protected." Trial Ct. Op. at 6 (quoting Amended Petition). Moreover, the trial court found that Ms. Ullery's work for the defense in the instant case, in conducting the DNA testing, was "without inherent legal meaning," strongly implying that whatever results or opinions she possessed, memorialized or otherwise, would not be protected under the work-product doctrine if the Commonwealth sought to question her on her defense work.

**2.** At one point, the Commonwealth expressly submits that it is seeking "facts—DNA test results." Commonwealth Brief at 20. That may be what the Commonwealth seeks, but the order at the heart of this dispute did not grant it.

*Id.* On appeal, the Superior Court panel majority, in affirming the trial court's reasoning, overstated the scope of the certificate, finding that the trial court had required Ms. Ullery to attend and "testify as to the results of DNA testing ... conducted on a pair of blue jeans." Slip Op. at 1. In sum, both parties have regrettably approached the issue as if it involved an order compelling disclosure of the expert's findings or opinions, and the lower courts' opinions were not exactly models of clarity in appreciating the governing record.

Contrary to the assumptions and implications attending the arguments of both parties, and notwithstanding the misplaced commentary by both lower courts, the signed certificate at issue in this case was not a *subpoena duces tecum*.[3] It did not order the production of any tangible evidence relating to Ms. Ullery's expert research or opinions. Nor did it purport to compel Ms. Ullery's testimony regarding that research or those opinions. In short, it was not a discovery order. It simply was a certificate to be presented to a judge in the Commonwealth of Virginia for proceedings to procure a subpoena for Ms. Ullery's attendance at appellant's trial. Accordingly, the sole and exceedingly narrow issue of appealability here is whether the defendant in a criminal case may appeal, as of right, from a pre-trial order refusing to quash a certificate which directs an out-of-state defense expert to "appear and testify," where the defense has assured the court that it does not intend to call that expert at trial.

In answering this question in the affirmative, the Majority assumes that the **body of a person**—where that person is a defense expert in a criminal case—is protected "attorney work-product," no different from reports or documents. The Majority indulges this fiction so that it can fit the square peg presented by this case—*i.e.*, a mere order directing an out-of-state defense witness to appear at trial—into the round hole that is this Court's attorney work-product jurisprudence in the context of the collateral order doctrine. By doing this, the

3.  "A subpoena ordering the witness to appear and to bring specified documents, records, or things." Black's Law Dictionary, 8th Ed. (2004).

Majority converts the matter into a discovery case, which in turn resolves the question of collateral order appealability. While I agree with the Majority's articulation of the collateral order rule and with its ultimate conclusion that the denial of the motion to quash the certificate is appealable under that rule, I would focus more closely upon the actual nature of the order, and thus, I would accept jurisdiction under the collateral order doctrine for very different reasons.

I agree fully with the Majority's reasoning concerning whether the certificate in question was separable from the main cause of action below, see Majority op. at 944, but take issue with the Majority's analysis of the second and third prongs of the collateral order test. The Majority, relying on *Commonwealth v. Dennis*, 859 A.2d 1270 (Pa.2004), and *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999), finds that the importance prong of the collateral order rule—*i.e.*, whether the right implicated by appellant's claim is too important to be denied review—has been satisfied because the trial court's certificate "implicates, *inter alia*, the work-product doctrine." Majority op. at 944. Contrary to the Majority, I would not so readily group the mere witness appearance order challenged in this case with those that were at issue in *Dennis* and *Ben*. Those cases involved trial court discovery orders which actually directed the production of documents. Neither case can be considered controlling here because the "right" implicated by appellant's challenge is not the same as the rights involved in those cases—*i.e.*, an attorney's right to keep confidential his thought processes in *Dennis*, 859 A.2d at 1278, and the statutory privilege asserted by the third-party witness in *Ben*, 729 A.2d at 549. In light of the actual order at issue and the procedural posture of this case, the only right at issue—if, indeed, it is a "right" at all—is the right to protect a defense expert from being required to appear at a defendant's criminal trial. It is a right that falls, at best, one very significant step short of the right to avoid the production of attorney work-product, see Pa.R.Crim.P. 573(G), as extended to include the work-product of an attorney's agents. *See United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

Neither appellant nor the Majority has identified any reasons why a mere appearance order should be deemed to satisfy the collateral order doctrine. In my view, because an objection can always be raised at trial to any actual threat to privileged work-product, and because the defense can always seek relief via a motion *in limine,* a mere order to appear ordinarily should not be deemed appealable.

I also am not comfortable with the suggestion by Mr. Justice Saylor, in his Concurring Opinion, that our collateral order jurisprudence requires a categorical approach to collateral order "importance." Rather, the "importance" of a claim or right is always most appropriately analyzed in light of all of the circumstances of a given case. Of course, it may be that certain values, like the confidentiality advanced by the work-product doctrine, are such that they will usually satisfy the importance requirement. But in other instances, there should be room for flexibility. For example, if the order to appear in this case had not been accompanied by expressions of the trial court concerning the applicability of the work-product privilege, or if it were not so apparent that the only reason the Commonwealth sought the witness's appearance was to breach the privilege, I would hold that the order fails the importance prong of the text.

However, the circumstances of this case are such that it is not a mere order-to-appear case. I would hold that appellant's claim attains "importance" here not by indulging the fiction that the order was discovery-based, but solely because of the unique circumstances presented. From the outset, the Commonwealth's intertwining of its desire to have Ms. Ullery present at trial with its desire to actually obtain Bode's DNA test results caused confusion, as evidenced by the disparity between the Commonwealth's initial petition and its proposed certificate. *Compare* Petition at ¶ 8 *with* Certificate at ¶ 7. The Commonwealth's conflated position has apparently persisted throughout the litigation, notwithstanding that the order at issue—and appellate courts review **orders,** not theories, or failed requests—did not direct appellant to produce any documents, test results, or expert opinions. Appellant's overly

broad motion to quash contributed to the conflation, and it now appears that both parties either misperceive the order, choose to ignore its contours, or consider it nearly inevitable that Bode's DNA results will ultimately be "produced" as a result of Ms. Ullery's appearance. Mere fear of a discovery violation ordinarily would be too attenuated to warrant pre-trial review, but what decisively alters the calculus, in my view, is that the trial court has essentially announced in advance that it intends to permit inquiry despite appellant's work-product claim. The Superior Court's affirmance only added to the inevitably created by the universally lax approach taken to this litigation. Hence, I would find that the "right" implicated in appellant's circumstance, if not in his poorly articulated claim, is sufficiently important under these unique circumstances to warrant this Court's accepting jurisdiction, so as to ensure the administration of justice.

Similarly, I believe that the "irreparably lost claim" element of the collateral order test has been satisfied, not because the attorney work-product doctrine was implicated by the trial court's certificate, but because it almost certainly will be implicated, indeed, violated, in light of the trial court's opinion and the litigants' assumptions attending the case. I would hold that the inevitability of compelled disclosure, notwithstanding the actually benign nature of the trial court's order, puts appellant's challenge nearly enough to being irreparably lost that it would be unjust to deny review.

On the merits of the appeal, because I am willing to accept the inevitability that work-product will be affected, I concur in the Majority's analysis and disposition.

Justice SAYLOR, concurring.

I join the majority opinion. My only comment is that I held the narrower view of the collateral order doctrine, still followed in most jurisdictions, which would generally deem remedies available on appellate review after the entry of a final order disposing of all parties and claims adequate to redress errant intrusions on privileges belonging to a party litigant. *See* PAUL R. RICE, 2 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED

STATES § 11.34 (2d ed. 2004) ("Courts have consistently held that disclosure orders are neither too important nor too independent of the cause of action itself to justify immediate appellate consideration."); *accord Commonwealth v. Dennis*, 580 Pa. 95, 112, 859 A.2d 1270, 1281 (2004) (Cappy, C.J., dissenting, joined by Nigro, J. and Saylor, J.).[1] My rationale was that the dilution of the previously existing limiting principles would open appellate review as of right to a fairly broad class of discovery or production orders, and the resultant increase in piecemeal and fragmentary review would impose too substantial a burden on the orderly administration of justice. *Accord, e.g., Boughton*, 10 F.3d at 748–49. I also believed that Pennsylvania's established procedure for seeking permissive interlocutory review, *see* Pa.R.A.P. 1311–1323, served as an adequate safeguard against the possibility of substantial harm resulting from interim decisions falling outside the narrow class of collateral orders.

Nevertheless, I regard the majority's present opinion as a faithful application of the prevailing opinion in *Dennis*, 580 Pa. at 95, 859 A.2d at 1270. Moreover, I agree with the sentiment of the United States Supreme Court that, for the sake of predictability and coherence, the collateral order doctrine

---

1. I realize that in its seminal decision in *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999), this Court cited to the federal decision in *In re Ford Motor Company*, 110 F.3d 954 (3d Cir.1997), which took a substantially broader view of the collateral order doctrine relative to privilege issues. Still, I previously had read *Ben v. Schwartz* as centered on the facts before the Court—involving the assertion of privilege applicable to third parties to the underlying litigation—and not as a wholesale adoption of the Third Circuit's approach. Indeed, read against its facts, *Ben v. Schwartz* is consistent with the widely held view that claimed intrusions on core privileges pertaining to non-parties are excepted from strict finality requirements. *See Church of Scientology v. United States*, 506 U.S. 9, 18 n. 11, 113 S.Ct. 447, 452 n. 11, 121 L.Ed.2d 313 (1992) (citing *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918)). The substantially broader *Ford Motor Company* approach to the collateral order doctrine relative to assertions of privilege by party litigants, however, is not as widely accepted. *See, e.g., United States v. Billmyer*, 57 F.3d 31, 35 (1st Cir.1995) (reflecting the traditional position of non-appealability); *Boughton v. Cotter Corp.*, 10 F.3d 746, 748–49 (10th Cir.1993) (same). *But see United States v. Philip Morris Inc.*, 314 F.3d 612, 618–21 (C.A.D.C.2003) (following *Ford Motor Company* ).

should be applied on a category-wide basis. *See, e.g., Cunningham v. Hamilton County,* 527 U.S. 198, 206, 119 S.Ct. 1915, 1921, 144 L.Ed.2d 184 (1999) ("[W]e have consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral.").

For these reasons, I believe that the instant appeal is properly before the Court pursuant to the collateral order doctrine. I am also fully in line with the majority's merits analysis as concerns the privilege issue.